McGRAW v. MOTT.

MOTT v. BUCKHORN PORTLAND CEMENT CO. et al.

(Circuit Court of Appeals, Fourth Circuit. May 25, 1910.)

No. 905.

1. COURTS (§ 371*)—FEDERAL COURTS—EQUITY JURISDICTION—ENFORCING REMEDY GIVEN BY STATE STATUTE.

Section 65 of the corporation act of New Jersey (P. L. 1896, p. 298), which authorizes a suit by any creditor or stockholder to wind up the affairs of a corporation which has become insolvent or suspended its ordinary business for want of funds to carry on the same, creates a right which may be enforced in a federal court of equity having jurisdiction of the parties.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 371.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** CORPORATIONS (§ 615\*)—INSOLVENCY PROCEEDINGS—NEW JERSEY STATUTE —SUIT IN FEDERAL COURT.

A suit to wind up the affairs of an insolvent corporation of New Jersey under section 65 of the corporation act of that state (P. L. 1896, p. 298), as such act has been construed by the Supreme Court of the state, may be brought by a simple contract creditor, and, even if such objection would lie to a suit brought in a federal court of equity, it is open only to the corporation and cannot be raised by an intervening stockholder.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 615.\*]

**3.** COURTS (§ 264\*)—FEDERAL COURTS—SUIT FOR ANCILLARY RECEIVERSHIP— SCOPE OF JURISDICTION.

Where a federal court of equity in New Jersey, acting under section 65 of the corporation act of the state (P. L. 1896, p. 298), granted an injunction against a corporation of that state on the ground of insolvency and appointed a receiver for its property, it was in accordance with the recognized federal practice for the complainant, with leave of that court, to institute a suit for the appointment of an ancillary receiver in the federal court of another district in which the corporation had property, and, while a stockholder may be permitted to intervene in the ancillary suit and contest the right of the complainant, he cannot in such suit, or on appeal from the decree therein, question the jurisdiction of the court in the principal suit, nor obtain a review of its decree.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 264.\*

Supplementary and ancillary proceedings and relief in federal courts, see note to Bedford Quarries Co. v. Thomlinson, 36 C. C. A. 276.]

**4.** APPEAL AND ERROR (§ 983\*)—REVIEW—DISCRETION OF COURT—SALE OF PROPERTY.

The sale of the property of an insolvent corporation pending contested litigation as to the right, while not usual, is within the sound discretion of the court, and its action cannot be reviewed where the fairness and validity of the sale are not otherwise attacked.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 983.\*]

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Martinsburg.

Suit in equity by Abram C. Mott against the Buckhorn Portland Cement Company; John T. McGraw intervener. Decree for complainant, and the intervener appeals. Affirmed.

Appellee, Abram C. Mott, a citizen and inhabitant of the state of Pennsylvania, for and on behalf of himself and all other creditors and stockholders, on March 2, 1908, filed his bill in equity in the Circuit Court of the United States for the District of New Jersey, against the Buckhorn Portland Cement Company, a corporation chartered and organized under the laws of the state of New Jersey, in which he alleged: That said corporation was duly chartered and organized for the purposes and with the powers set out in the certificate of incorporation attached and made a part of his bill. That said corporation owned, and prior thereto operated, "a portland cement plant" in the state of West Virginia. That said corporation operated the said plant, with occasional interruptions, from the month of June, 1903, until October, 1907, at a money loss of $400,000, so that, in the month of October, 1907, it became necessary for the defendant to close its plant down and suspend business because it had no money to continue the same. That since then the plant had been practically idle, and that, before the business could be resumed, it would be necessary to increase the capital to raise money to pay wages, purchase supplies, and carry its product until it could be marketed, and this could not be done because it had no accounts receivable above $500 and "its borrowing resources had been exhausted." That complainant was

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

president of the corporation, and "by reason of that fact had advanced the sum of $143,150 from his own private funds to pay wages, purchase supplies and machinery, and carry the concern along, and that all he had to show for said loans were certain matured promissory notes, given by said company, amounting, in the aggregate, to the sum of $143,150.08, upon which there was due for accrued interest the sum of $6,175. That, in addition to the above indebtedness, the defendant owed him the sum of $11,200 for salary as president" and other sums, aggregating in all the sum of $166,739.07, exclusive of bonds and stocks. That there were no other unsecured creditors of defendant known to complainant. That the Pennsylvania National Bank held its notes for $56,700 for loans for which it held as collateral bonds for the same amount, being a portion of an issue of $200,000 secured by deed in trust. That the bank was further secured by the guaranty of complainant and three others. That the capital stock of said company was $800,000, of which $450,000 was preferred stock. That complainant held 1,256 shares of the common and 1,330 shares of the preferred stock and $77,000 of bonds secured by the deed of trust, and that $67,750 of bonds were held by other parties. That defendant company had less than $500 in its treasury. That the value of the stock on hand did not exceed $2,500 and bills receivable $500. That these assets, together with the plant at Manheim, in West Virginia, constituted the resources of defendant company. Complainant prayed that defendant company be enjoined from exercising any and all privileges and franchises granted by its charter and from receiving or collecting any debts due, and that a receiver be appointed "in accordance with the statute in such cases made and provided, and that he might have such other and further relief in the premises, as the nature of the case may require and as may be agreeable to equity and good conscience."

On the filing of the bill, an order was made directing defendant to show cause, on the 9th day of March, why an injunction should not issue and a receiver be appointed, pursuant to the prayer of complainant. On the return day a decree was made by Judge Lanning reciting that the cause came on for hearing "in the presence of Carrow & Kraft, of counsel with the complainant, and Walton Pennewill, of counsel with defendant, and it appearing that a copy of the bill of complaint and affidavit thereto annexed, together with a copy of the rule to show cause heretofore allowed, has been duly served upon the defendant, and it further appearing that the defendant, by its answer, this day filed, admits that it is insolvent and without funds or resources to meet its obligations or continue its business, and that said defendant joins in the prayer of the complainant that it be decreed insolvent and a receiver be appointed, and it appearing to the court from the bill of complaint and affidavit thereto annexed and the answer of defendant that said defendant has suspended its ordinary business and is insolvent," it is ordered that the rule to show cause be made absolute, and that Robert A. Patton of Philadelphia be and is appointed receiver of the defendant company with the usual and necessary powers conferred upon receivers and "required by law and by an act of the Legislature of New Jersey entitled 'An act concerning corporations (Revision of 1896)' approved April 21, 1896, and all acts amendatory thereto and supplementary thereto." P. L. 1896, p. 277. The receiver was required to file a bond in the sum of $75,000 with approved security. "And the said receiver is hereby authorized to apply to the Circuit Court of the United States for the Northern District of West Virginia in such proceedings as may be necessary to protect the property of the defendant corporation located in that district and leave is given to the plaintiff in this cause to make application for an ancillary receiver in the United States Circuit Court of said district."

On March 11, 1908, complainant filed, in the Circuit Court of the United States for the Northern District of West Virginia, his bill in equity against defendant company reciting substantially the same facts contained in his original bill in the Circuit Court of New Jersey, and further alleging that he had filed the bill in said court, making a copy thereof, together with the order of Judge Lanning, hereinbefore set forth, a part thereof. Defendant, "pursuant to direction of its board of directors," answered the bill, admitting the allegations therein and joining in the prayer for the appointment of

a receiver. The answer is filed under the seal of the corporation and verified by Charles M. Mott, its secretary.

On March 13, 1908, an order was made by Judge Dayton, reciting the order made by Judge Lanning and appointing the said Robt. A. Patton receiver of said corporation in West Virginia. This order makes no reference to the New Jersey statute, pursuant to which the court in New Jersey proceeded. The receiver was directed to file bond and make an inventory of the property of the corporation located in West Virginia. The bond was duly filed and approved, and on May 13, 1908, the receiver filed a petition in the cause setting forth that he had taken into his possession all of the property of said corporation in West Virginia, an itemized inventory whereof he attached. He also recites that he has filed, in the Circuit Court of New Jersey, a petition setting forth the same facts, and that "on April 27, 1908, a petition of John T. McGraw was filed in said suit in New Jersey, a certified copy of which is hereto attached, marked 'Petitioner's Exhibit F,' and asked to be read as a part hereof." He recommended the sale of the property, etc.

The record shows that on April 25, 1905, appellant filed, in the Circuit Court of New Jersey, his petition setting forth that he was a citizen and resident of the state of West Virginia and a stockholder in defendant corporation, being the owner of 500 shares of common and 500 shares of the preferred stock of said company. He further alleged: That complainant had absolute control and management of the business affairs of the company and its indebtedness, except the bonds secured by mortgage. That the assets of the company, as he is informed, are ample to discharge its indebtedness to complainant "provided reasonable time is given to those persons interested in the Buckhorn Portland Cement Company to work up, either a reorganization or a favorable disposition of its property, or the operation of the plant under favorable conditions and capable management." That the assets of the company, including its plant, under favorable circumstances, are worth very much more than its liabilities, and that the court should not "hurriedly order a peremptory sale to be made of its property without giving the stockholders interested an opportunity to ascertain whether arrangements cannot be made to prevent the sacrifice of their interests and the interests of the company." He asks that he may intervene and an opportunity given him to answer the bill, etc.

On the 27th day of April, 1908, the petition was heard by Judge Lanning and, after argument by counsel for petitioner and complainant, the petition of the receiver for an order to sell the property was granted.

It was provided that "the same be not carried out until it shall have been confirmed by the United States Circuit Court for the Northern District of West Virginia." The petition of John T. McGraw was denied by Judge Lanning.

On May 13, 1908, appellant filed his petition in the court below setting out the proceedings had in the Circuit Court of New Jersey, and alleging "that, at the time of filing his said petition in the Circuit Court of New Jersey, he was not in possession of all the facts necessary to a full statement of his case, nor in the possession of all the facts, at this time, known by him to exist," etc. He alleges a number of additional facts, many of which he says constitute a valid defense to complainant's bill, and asks that he be permitted to intervene in the cause in said court and file answer, etc.

On the same day, May 13, 1908, Judge Dayton heard the petition of the receiver upon the order made by Judge Lanning, and the petition of John T. McGraw, and confirmed said order and directed the receiver to proceed with the sale of the property, being of the opinion from the petition, exhibits, and proceedings that it is imperative, looking to the interest of all persons interested in said property, that a speedy sale of the same be had and that "leave be given McGraw to file such legal defense as he may be entitled to in this cause."

On June 13, 1908, appellant, McGraw, filed in the Circuit Court for the Northern District of West Virginia, a demurrer to the bill, for that:

(1) That it is not alleged that complainant had reduced his claim to judgment in any court of law and by reason thereof a court of equity could not entertain the plaintiff in the premises.

(2) That a simple contract creditor may not have and maintain a suit in equity of the character described in the bill, unless additional grounds be alleged, and that no such grounds are alleged.

(3) That complainant had a full and adequate remedy at law. That he could recover judgment at law on his debt and issue execution against the property of defendant. That, by proceeding in equity, complainant deprives defendant of trial by jury as secured by the Constitution.

The two other grounds assigned are but repetition of the foregoing.

Appellant filed a petition asking that the sale of the property which had been advertised by the receiver to take place on January 19, 1908, be suspended until his demurrer was heard and disposed of. The court set the cause down for argument on June 16, 1908, and, on said day, sustained a motion by complainant to strike from the files the demurrer of McGraw, and further adjudged that "being of the opinion that John T. McGraw is an improper party to this suit, and that the court had improperly ordered the said McGraw to be made a party defendant, the same is corrected and set aside, and the prayer of said John T. McGraw be and the same is hereby denied." McGraw excepted, assigned numerous errors, and filed his petition for an appeal, which was granted by his honor, Judge Goff. The appeal was heard by the Circuit Court of Appeals at Asheville, N. C., on July 18, 1908, when the decree of the Circuit Court of West Virginia was reversed and mandate issued, directing that leave be given the defendant company and Abram C. Mott to answer the appellant's petition, "and that the cause be matured for final hearing at the earliest day practicable, with proper judicial proceedings, and for such further action as may, under the circumstances, be proper."

On August 18, 1908, the defendant company filed its answer denying the material averments of McGraw's petition. On the same day complainant, Abram C. Mott, filed his answer to said petition denying the averments thereof, and setting up as a bar thereto the decree of Judge Lanning, denying the petition and application to intervene. On the same day, appellant, John T. McGraw, by way of "additional and supplementary demurrer," averred:

(1) That the complainant's bill is multifarious, and that more than one cause of action is set up therein.

(2) That the complainant, Mott, cannot maintain his bill as a simple creditor and at the same time sue herein as a stockholder.

Other causes of demurrer are assigned which are involved in the foregoing.

On the same day a decree was made overruling the demurrer and giving to appellant 20 days within which to file his answer to the original bill and until the 25th day of September, 1908, to take his proofs sustaining the allegations of the petition, and giving to the complainant and the defendant company a day named to submit their proofs. Thereafter depositions were duly taken and submitted to the court, and on October 21, 1908, the cause came on for hearing before Judge Dayton, who found that the defendant company was indebted to complainant in the sum of $172,006, for which amount a decree was rendered. The court further found that the defendant company was insolvent and had suspended its regular business and had admitted its inability to carry on its business. Reciting the orders and decrees made by Judge Lanning, the same were again confirmed, and the court, being of opinion that a sale of the property would promote the interest of all parties concerned, ordered the receiver to proceed to make sale thereof upon the terms and in the manner set out in said decree.

On December 12, 1908, the receiver made his report to the court, reciting: That, pursuant to and in compliance with its decree, he sold the property to complainant, Abram C. Mott, the highest bidder, for the sum of $15,000, subject to the bonded indebtedness secured by mortgage, set out in the record. That in his opinion the said sum, in the present condition of the property, was an adequate price and recommended the confirmation thereof. The receiver asked that a special master take an account of his dealings, etc. On December 12, 1908, the sale was confirmed, and the master directed to settle the accounts of the receiver and make distribution of the assets. The master on January 19, 1909, made his report stating an account. On March 16, 1909, appellant filed an answer setting up matters in defense, etc. An order was made that the answer be filed "with leave reserved to the plaintiff to move

rejection or file exception or reply to said answer." On April 9, 1909, appellant filed his petition for appeal assigning error.

William A. Glasgow, Jr., and George W. Johnson (Jake Fisher, on the brief), for appellant.

S. W. Walker (Faulkner, Walker & Woods, on the brief), for appellee.

Before GOFF and PRITCHARD, Circuit Judges, and CONNOR, District Judge.

CONNOR, District Judge. When this cause was called for argument, the attention of the court was called to the fact that the last decree, from which the appeal is' taken, and which disposed of the merits of the cause, was passed on December 12, 1908, and the report of the master was filed January 19, 1909, in regard to which there does not appear that any exception is taken, and on March 16, 1909, appellant filed an answer reiterating the allegations in his petition, and further alleging that, on February 24, 1909, complainant had executed to one Gerstell a deed conveying the property purchased at the sale made by the receiver and conveyed to him, that the consideration recited in this deed was $215,000, and that said conveyance was for the benefit of the "Cement Trust." A copy of this deed is attached as an exhibit. It is insisted by complainant that this answer should be stricken from the files. It appears that some motion to that end was made; the court reserving to the complainant the right to make such motion. It appears that, after the demurrer filed by appellant was overruled and time given him to file answer, the parties treated the petition, which contained the allegations relied upon as a defense to the bill, as an answer and replied to same. The depositions were taken upon the theory that these papers set forth the matters in controversy. We do not perceive that anything additional is set up in the answer, filed March 16th, except the deed to Gerstell, which was executed subsequent to the decree appealed from, and cannot be brought into this litigation. The appellant's assignments of errors, although presented in several phases, are directed principally to the jurisdiction of the Circuit Court of West Virginia.

It must be conceded that the cause has taken a somewhat erratic course. This, we think, has been caused, to some extent, by reason of a failure to keep in view the basis of the jurisdiction of the Circuit Court of New Jersey, wherein the original bill was filed. It is urged that the court was without jurisdiction, because the complainant had not reduced his claims to judgment in a court of law; that he had a complete and adequate remedy at law by obtaining judgment on his debts against defendant corporation and suing out execution against its property. These objections are directed to complainant's right, as a simple contract creditor, to invoke the equity jurisdiction of the court. It is also suggested that he may not prosecute his suit in a court of equity, in the dual capacity of a creditor and stockholder. It will be noted that, although the property of the defendant company had been conveyed, by way of mortgage, to secure a bond issue of $200,000, the mortgagee is not made a party defendant; hence the sale, and title

conveyed under the decree, is subject to this incumbrance; that only the equity of redemption is sold. Conceding that, generally, a court of equity will not take jurisdiction of a bill to subject property to the claims of creditors through the medium of a receiver, unless the debt of the complainant has been reduced to judgment, it is by no means clear that this objection may not be waived; the defendant assenting to the jurisdiction. In Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 380, 14 Sup. Ct. 127, 128 (37 L. Ed. 1113), Mr. Justice Brewer says:

"Defenses existing in equity suits may be waived, just as they may in law actions, and, when waived, the cases stand as though the objection never existed. Given a suit in which there is jurisdiction of the parties, in a matter within the general scope of the jurisdiction of courts of equity, and a decree rendered will be binding, although it may be apparent that defenses existed which, if presented, would have resulted in a decree of dismissal." Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. 486, 32 L. Ed. 934; Brown v. Lake Sup. Iron Co., 134 U. S. 530, 10 Sup. Ct. 604, 33 L. Ed. 1021.

This line of decisions is found in cases wherein the general jurisdiction of the court of equity is invoked. Here, however, it is clear that the original bill, filed in the circuit court of New Jersey, is based upon the procedure providing for winding up the affairs of an insolvent corporation by the statute of that state, being section 65 of the corporation act (Laws 1896, p. 298):

"Whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, any creditor or stockholder may by petition or bill of complaint setting forth the facts and circumstances of the case, apply to the Court of Chancery for a writ of injunction and the appointment of a receiver or receivers or trustee, and the court being satisfied by affidavit or otherwise of the sufficiency of said application and of the truth of the allegations contained in the petition or bill, and upon such notice, if any, as the court, by order, may direct, may proceed in a summary way to hear the affidavits, proofs and allegations which may be offered on behalf of the parties, and if upon such inquiry it shall appear to the court that the corporation has become insolvent and is not about to resume its business in a short time thereafter with safety to the public and advantage to the stockholders, it may issue an injunction to restrain the corporation and its officers and agents from exercising any of its privileges or franchises and from collecting or receiving any debts, or paying out, selling, assigning or transfering any of its estate, moneys * * * except to a receiver appointed by the court, until the court shall otherwise order."

The jurisdiction of the court to entertain the bill in this cause is founded upon the diverse citizenship of the complainant and defendant corporation. The decree made by Judge Lanning, appointing a receiver, expressly refers to and is based upon the New Jersey statute. In Land Title & Trust Co. v. Asphalt Co., 127 Fed. 1, 62 C. C. A. 23, the jurisdiction of the Circuit Court to entertain a suit under this statute where the essential equitable elements exist is upheld by the Circuit Court of Appeals of the Third Circuit in an able opinion by Judge Gray. After quoting the statute, he says:

"It is true that, independent of statutory authority, the general equitable jurisdiction of the United States courts does not extend so far as to entertain a suit by a creditor against a corporation, seeking the appointment of a receiver of its business and property and an injunction against the exercise of its corporate franchises, solely on the ground of insolvency. It is, however,

well settled by adjudications of the Supreme Court and subordinate federal courts that if a state Legislature, by a valid law, create a right essentially equitable in its nature, prescribing a remedy for its enforcement substantially consistent with the ordinary modes of proceeding on the chancery side of the federal courts, no reason exists why it should not be pursued in a federal court of equity in the same form as it is in the state courts"—citing Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123; Gormley v. Clark, 134 U. S. 338, 10 Sup. Ct. 554, 33 L. Ed. 909.

The learned judge further says:

"The Constitution and laws of the United States provide an additional forum to that of the state, for the adjudication of suits involving controversies between citizens of different states, not a different law. * * * While state legislation cannot directly enlarge or contract the jurisdiction of the federal courts, it can create rights that are justiceable in such courts, which, without such legislation, were not cognizable therein."

Referring to the New Jersey statute, he says:

"A suit under these sections of the act is, therefore, cognizable in the United States Circuit Court having jurisdiction of the parties on its equity side. The right so created will be enforced by the remedies prescribed by the act, so far as the same are consistent with and not violative of the general equitable rules and procedure, as administered in the federal courts of equity."

In that case the complainant, although not a judgment creditor, was "the pledgee or mortgagee of the property of the defendant company." Judge Gray further says:

"It is not necessary, therefore, to discuss or decide the question as to the right of a simple contract creditor to proceed in a federal court of equity under the authority conferred by the state statute in the state Court of Chancery, or the question as to the right of the complainant in the receivership suit, as a lien creditor, to appeal, by such a bill, to the general equity jurisdiction of the Circuit Court."

In Jones v. Mutual Fidelity Co., 123 Fed. 509, Judge Bradford discusses the question presented under a Delaware statute, similar to the New Jersey act, in an able and exhaustive opinion, reaching the conclusion that a bill may be filed in the Circuit Court of the United States by a simple contract creditor.

Without entering into an extended discussion of the decisions, we reach the conclusion that, in view of the construction put upon the statute by the Supreme Court of New Jersey and its evident purpose, it is not essential to the jurisdiction of the Circuit Court of the United States that the complainant shall be a judgment creditor, or have a specific lien on the corporate property. If, however, the law be otherwise in that respect, it appears to be well settled that it is not open to the appellant, as an intervener, to raise the question; this being open only to the defendant corporation. The question of jurisdiction was waived and every essential averment of the bill admitted. In Citizens' Bank & Trust Co. v. Union Mining & Gold Co., 106 Fed. 97, Judge Newman says:

"The contention that this is not a suit of equitable cognizance, because the complainants are simple contract creditors, is raised too late, even if it can be raised by an intervening stockholder at all. * * * This is a bill brought to distribute the assets of an insolvent corporation, having its whole property and assets in Georgia and in this district. * * * The receiver hav-

ing been appointed, given bond, and taken charge of the property, and having cared for the same, and the defendant having acknowledged, by its answer, the debts and the necessity for the receivership, the intervening stockholder cannot raise this question: That the complainants are simple contract creditors.",

The conclusion is sustained by a number of decisions of the Supreme Court cited by the learned judge. Proceeding therefore upon the assumption that the Circuit Court of New Jersey had jurisdiction of the cause, and that its decrees are valid, we inquire as to the regularity of the proceedings had in the Circuit Court of West Virginia. It is immaterial in this aspect of the case whether the refusal of Judge Lanning to permit the appellant to intervene, or, by other appropriate proceeding, to be heard in that court, because he was permitted to do so in the Circuit Court of West Virginia, and was fully heard upon the merits of the case; the validity of complainant's debts and the insolvency of the defendant corporation having been established. These defenses he was clearly entitled, either as an intervener or as one of those persons having an interest in the property in whose behalf complainant sued, to make and have determined in some court. The Circuit Court of New Jersey having enjoined the defendant company and its officers from exercising any of its corporate powers, and having, so far as its power to do so extended, vested in the control of its receiver all of the property of the corporation, gave permission to complainant to make application to the Circuit Court of the Northern District of West Virginia for the appointment of an ancillary receiver. This was in accordance with the course and practice of the federal courts in such cases. There appears to be a distinction between an ancillary bill and a bill seeking the appointment of an ancillary receiver. The federal courts in the different states being foreign courts as to each other, the receiver appointed by the court in one state has no power to take charge of, sell, or dispose of property in another state, or to institute suits in the courts of such other state, except by way of comity.

"The difficulty is met, however, by the very convenient and satisfactory practice of instituting ancillary receiverships and appointing ancillary receivers in such foreign jurisdictions where the same becomes desirable or necessary. The practice of appointing ancillary receivers is indeed one of the striking features of the system built up by the federal courts for the administration and winding up of any business in the hands of a receiver, and especially insolvent corporations. It affords the only method for reaching and administering property, or assets, in a jurisdiction foreign to that where the receiver is originally appointed." 3 Street's Fed. Eq. Prac. § 2692.

That a receiver is an officer of the court appointing him, and can exercise no power or maintain any legal status except within the territorial limits of the court, is settled; the latest decision upon the subject being Great Western Mining & Mfg. Company v. Harris, 198 U. S. 561, 25 Sup. Ct. 770; 49 L. Ed. 1163. The bill filed by complainant in the Circuit Court for the Northern District of West Virginia conforms to the practice and pleadings in such cases.

"The court in which ancillary proceedings are instituted will usually, as a matter of comity, appoint the same person to be receiver as was appointed by the court of principal jurisdiction." Street's Fed. Eq. Prac. § 2697.

In this case the Circuit Court followed this practice and appointed Mr. Patton, the same person named as receiver by Judge Lanning. It is not quite clear that appellant was entitled by reason of his relation to defendant company, as a stockholder, to intervene and litigate the merits of the case, in the Circuit Court of West Virginia, except for the purpose of showing that the corporation was not insolvent.

If he had wished to insist upon the right, he should have appealed from Judge Lanning's order denying his petition to intervene. We do not suggest that there was error in the refusal; that question is not before us. It is quite clear that the jurisdiction of the original bill cannot be questioned in the ancillary suit.

In Gregory v. Van Ee, 160 U. S. 643, 16 Sup. Ct. 431, 40 L. Ed. 566, it is said:

"Manifestly, the decree in the main suit cannot be revised through an appeal from a decree on ancillary or supplemental proceedings, thus accomplishing indirectly what could not be done directly."

The mandate of the Circuit Court of Appeals, upon the appeal from Judge Dayton's order, dismissing his petition to intervene, directed the Circuit Court of West Virginia to proceed to hear and determine the controversy revised upon the petition and answer. This has been done, and the insolvency of the defendant corporation, together with validity of complainant's debt, established. The sale of the property, pending the litigation, while not usual, is within the sound discretion of the court, and not reviewable here. Mellen v. Moline Malleable Iron Works, 131 U. S. 352, 9 Sup. Ct. 781, 33 L. Ed. 178.

If the property did not bring a fair price, it was open to appellant to show that fact by evidence when the question of confirmation was under consideration, or he could have submitted an upset bid. The sale seems to have been conducted in accordance with the provisions of the decree. After the decree of December 12, 1908, nothing remained to be done except to state the account of the receiver and disburse the proceeds. This was done in accordance with the master's report. The answer of appellant of March 16, 1909, was, under the circumstances attending this case, improperly filed, and should have been stricken from the record.

There is no reversible error.

Affirmed.