STEVENS et al. v. EMPIRE CASUALTY CO.

(Circuit Court, N. D. West Virginia. July 22, 1910.)

1. EQUITY (§ 361*)—BILL—MOTION TO DISMISS—DISCHARGE OF RECEIVER.
   Where a bill sought to dissolve a corporation and distribute its assets by means of a receiver, motions to discharge the receiver and dismiss the bill would be considered as equivalent to a demurrer to the bill for want of equity.
   [Ed. Note.—For other cases, see Equity, Cent. Dig. § 757; Dec. Dig. § 361.*]

2. CORPORATIONS (§ 614*)—DISSOLUTION—SUIT BY STOCKHOLDERS—EQUITY RULES.
   A bill by the holders of $40,725 of a total $106,000 of the capital stock of a corporation to dissolve the same and distribute its assets, because of a cessation of business and mismanagement, was not within equity rule 94, requiring that a bill by stockholders allege that the suit is not collusive and show particularly the efforts put forth to secure action by the corporation's directors, but was rather a suit under Code W. Va. 1906, § 2285, authorizing the dissolution of a corporation at the instance of not less than one-third in interest of the stockholders on sufficient cause shown.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2439; Dec. Dig. § 614.*]

3. CORPORATIONS (§ 614*)—DISSOLUTION—STOCKHOLDERS—STATUTES.
   Under Code W. Va. 1906, § 2285, providing for a suit to wind up the affairs of a corporation at the instance of not less than one-third in interest of the stockholders, power is vested in courts of equity at the instance of stockholders holding one-third of the stock to wholly dissolve the corporation.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2435; Dec. Dig. § 614.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CORPORATIONS (§ 621*)—DISSOLUTION—RECEIVERS.

Under Code W. Va. 1906, § 2286, declaring that, when a corporation expires or is dissolved or before its expiration or dissolution on sufficient cause shown, on application of a creditor or a stockholder, the court may appoint a receiver to take charge of and administer its assets, etc., and, whether a receiver be appointed or not, to make such orders and decrees and award such injunctions in the cause as justice and equity may require, a court of equity has power at the instance of a single creditor or stockholder, before or after dissolution of a corporation, on sufficient cause shown, to appoint receivers to take charge of and administer its assets, and make such orders and decrees and award such injunctions as justice and equity may require.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2461; Dec. Dig. § 621.*]

5. CORPORATIONS (§ 621*)—DISSOLUTION—RECEIVERS.

Defendant corporation was organized under Laws W. Va. Dec. 17, 1904, to do a general casualty, accident, and industrial insurance business with an authorized capital of $150,000 subsequently increased to $250,00. Plaintiffs were the owners of full-paid stock aggregating $40,725, total stock subscribed and issued being $106,000. It was alleged that the corporation had suspended its business for more than two years continuously, and that it had not sufficient assets to meet the requirements of West Virginia laws permitting it to do business; that it had practically abandoned as hopeless the effort to sell sufficient stock to enable it to do so, and in consequence it was sought to procure its stockholders to turn over their stock to another company in exchange for its stock; and that the corporation had invested a considerable portion of its funds in securities of doubtful value, and was spending for office rents, stationery, furniture, fixtures, etc., $7,000 annually with no business done and no hope of doing business from which an income could be derived. Held sufficient to justify the appointment of a receiver in stockholders' dissolution proceedings and the issuance of an injunction restraining transfer of property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2461; Dec. Dig. § 621.*]

In Equity. Bill by R. N. Stevens and others against the Empire Casualty Company for dissolution thereof. Plaintiffs' motion for a temporary injunction granted, and defendant's motion to discharge receiver and dismiss bill denied.

On May 25, 1910, Stevens and 52 others presented their bill against the Empire Casualty Company, in which they allege themselves to be citizens of Maryland, Virginia, Illinois, Minnesota, and Massachusetts, and the defendant to be a corporation organized under the laws of West Virginia under charter of date December 17, 1904, with an authorized capital of $150-000 subsequently, on September 9, 1908, increased to $250,000, to be divided into 25,000 shares of par value of $10 each, and empowered to transact a general casualty, accident, and industrial insurance business; that plaintiffs were the owners of full-paid stock in defendant in the aggregate sum of $40,725, having paid $15 per share therefor; that the total of defendant's stock subscribed for and issued was $106,000; that prior to March, 1908, defendant attempted to carry on business in West Virginia and issued a small number of casualty policies under the laws then existing in that state permitting a corporation with a capital of $30,000 to do such business, but that on February 25, 1907, the Legislature of the state forbade any corporation from writing casualty policies without a cash capital of $100,-000 invested in securities with market value at par, but permitted health and accident insurance companies with a capital of $10,000 to write certain small policies; that defendant continued under its license to carry on busi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

ness until 1908, when, being unable to comply with the new statute as to casualty companies, it received then a license to write the small policies provided for companies with $10,000 capital good until March, 1909; that it was found impracticable to carry on a successful business on this restricted basis and renewal of this license was not secured, and since that time defendant has written no insurance of any kind in West Virginia or elsewhere and for more than two years past has suspended its proper corporate business, ceased to maintain any place of business in the state, removed all of its assets of every kind to the city of Philadelphia, Pa., where expensive offices are maintained, but without doing any insurance business there or being in condition to comply with the laws of Pennsylvania permitting it to do business there; that its officers for more than two years have been seeking to sell sufficient capital stock to enable it to resume its corporate business, but all such efforts made at large expense have failed and have been abandoned as hopeless; that on March 17, 1910, a proposition was submitted to defendant's stockholders by the Columbus Securities Company for the exchange of all defendant's outstanding full-paid stock for an equal amount of the paid-up stock of the securities company, the latter to deposit in defendant's treasury a sum sufficient to enable it to do business; that this securities company was purely a holding company, having no substantial assets, interested in two other small casualty companies, and its purpose is alleged to be to effect a consolidation of the three; that plaintiffs as stockholders were unwilling to exchange their stock for that of the securities company or to be parties to the scheme, and the officers and directors of defendant are charged with violating their trust obligations to plaintiffs and other stockholders by seeking to consummate it. It is then charged that the officers and directors of defendant have no other feasible plan for financing it, that they have grossly mismanaged its affairs, have expended large sums in expensive offices, for salaries, supplies, printing, stationery, furniture, fixtures, since the suspension of business, amounting to nearly $7,000, without benefit to the company and to the depletion of its assets, and, further, have invested considerable sums received from stock subscribers in securities with an admitted market value less than par in express violation of the laws of West Virginia in that behalf made and provided, have refused to pay valid claims reduced to judgment until threatened with the appointment of a receiver by the insurance commissioner of West Virginia, and have refused owners of nearly 35 per cent. of defendant's stock to examine and audit its books and accounts. The prayer of the bill was for a winding up of the affairs of defendant, its dissolution, a distribution of its assets, an injunction against it, its officers and agents, from making further depletion and disposition of the assets, and for immediate appointment of a receiver to take possession of and preserve the same.

Upon presentation of this bill, an order was entered by this court setting the cause down for hearing upon the motion for injunction on June 14, 1910, the first day of the next term at Parkersburg, requiring five days' notice to be given of such hearing, and, deeming necessity existing therefor, appointing a receiver to take immediate charge of and to preserve the property and assets of defendant, but reserving the right to it to move for the discharge of such receiver at said hearing on June 14, 1910, without further notice to plaintiffs, if it could show cause therefor. On June 14, 1910, the day set for such hearing, the defendant tendered its answer, the affidavits of J. D. Hendrickson and Lee J. Fristoe, moved the discharge of the receiver, and the dismissal of the bill. Two days after, the plaintiffs tendered the affidavit of R. Nelson Stevens to the filing of which objection was made by defendant, and also filed a general replication to defendant's answer. The several motions for injunction, for the discharge of the receiver, and for dismissal of the bill were fully argued and submitted.

By its answer the defendant admits its incorporation as charged, the change in the law requiring an increased capital of $100,000 in order to do casualty business, its determination to increase its capital to $250,000; denies that certain named ones of plaintiffs are stockholders; sets forth

that others of the plaintiffs claim more stock than they are entitled to, and what is alleged to be the true holdings of those plaintiffs, who are stockholders, aggregating 2,265 shares of the par value of $22,650 of a total of 12,268 shares of par value of $122,268 issued and outstanding; charges it carried on a profitable business until the law was amended in 1907; admits that its business thereafter was limited, and that as a matter of wise business policy no license was taken 'out after March, 1909, but effort was made at once to secure by subscriptions the increased capital required by the new law, that sufficient subscriptions were obtained practically, were called to be paid in, which payments were, by many stockholders, including a number of the plaintiffs, delayed in payment, whereby the company was hampered in its effort to meet the requirements of the law; denies that it has suspended business for more than two years; denies that it has ceased doing business in West Virginia and removed all its assets to Philadelphia, but alleges it has for some months maintained offices there; admits it has not applied for the right to do business in Pennsylvania under her laws, but charges it has done business in West Virginia down to March, 1909; alleges that in March, 1910, by reason of the default of the stockholders in paying subscriptions, at a stockholders' meeting it was determined by a vote of 8,848 shares, more than 60 per cent. of the whole, to accept the proposition of the securities company to exchange stock, the latter's agreement to deposit in defendant's treasury a sum sufficient to enable it to do business; denies the securities company's 'purpose to be to consolidate it with the other two companies in which such securities company was interested; denies all charges of mismanagement and excessive expenses, and also denies the investment of its funds "knowingly or purposely" in securities at less than par contrary to the laws of West Virginia; denies the refusal to pay valid claims; admits the auditor and insurance commissioner of West Virginia threatened through mistake to have a receiver appointed, but afterwards declared himself mistaken and deplored it, and generally denies all charges of having abandoned business and of misconduct or abuse of power charged in the bill. This court by reason of stress of court work being unable to pass immediately upon the questions involved, an appeal within 30 days from the appointment of the receiver to its action in making such appointment has been granted and perfected, but with understanding with counsel that, if this court should determine that the motion to discharge the receiver should be sustained, such appeal would be dismissed.

John Marshall and Luther E. Mackall, for plaintiffs.
H. F. Stockwell and W. W. Van Winkle, for defendant.

DAYTON, District Judge (after stating the facts as above). The motions to discharge the receiver and dismiss the bill must be considered as equivalent to a demurrer alleging in effect that no equity appears on the face of the bill. The affidavits and answer can properly be considered the answer in the nature of an affidavit upon plaintiffs' motion for preliminary injunction.

The defendant insists that the receiver be discharged and the bill dismissed: First. Because not complying with equity rule 94 in failing to allege "that the suit is not a collusive one to confer jurisdiction," and omitting to allege with particularity the efforts of plaintiffs to secure such action as they desire on the part of managing directors, or "if necessary of the shareholders and the cause of failure to obtain such action." Second. Because by equity rule 94 the bill is required to be verified by oath, which must be positive, and not upon information and belief. Third. Fraud, mismanagement, and misappropriation is stated upon information and belief with no

positive statement of any act or circumstance positively and specifically sworn to.

It does not seem to me that this case is one coming within the scope of equity rule 94, which is restricted to suits "founded on rights which may properly be asserted by the corporation." On the contrary, it seems to me the case is founded upon section 57 of chapter 53 of the Code of West Virginia (section 2285) 1906, providing that, at the instance of not less than one-third in interest of the stockholders of a corporation desiring to wind up its affairs, appeal may be made to a court of equity for the purpose, and, "if sufficient cause therefor be shown," such court may decree such dissolution, make such orders and decrees and award such injunctions as justice and equity may require, and upon section 58, c. 53 (Code 1906, § 2286), which provides:

"When a corporation expires, or is dissolved or before its expiration or dissolution, upon sufficient cause being shown therefor, such court * * * may on application of a creditor or stockholder, appoint one or more persons to be receivers to take charge of and administer its assets; and whether such receiver be appointed or not, may make such orders and decrees and award such injunctions in the cause as justice and equity may require."

Under the first section cited, it would seem that the power is vested in courts of equity at the instance of stockholders holding one-third of the stock "if sufficient cause therefor be shown" to wholly dissolve the corporation. Under the second section quoted, it would seem that such court of equity is vested with power at the instance of a single creditor or stockholder, before or after dissolution "upon sufficient cause being shown therefor," to appoint "receivers to take charge of and administer its assets," and "make such orders and decrees and award such injunctions as justice and equity may require." Looking to the allegations of the bill alone and taking them to be true, as I must do upon the determination of these motions to dismiss it for want of equity apparent on its face and to discharge the receiver, I am constrained to hold its allegations to be sufficient to bring it within the scope of both of these statutory provisions.

Construing the latter section, the Supreme Court of Appeals of West Virginia in Crumlish, Adm'r, v. Shen. Val. Railroad Co., 28 W. Va. 623, held:

"It is ordinarily necessary, before a court of equity can interfere with the management of a corporation at the suit of a stockholder, to show that the directors or managing officers having control of it have refused to act in its behalf. But, if it be made to appear in any manner that the corporation cannot safely be left to obtain relief through the action of its officers, equity will interfere at the suit of a stockholder without proof of a demand upon the managing agents and their wrongful refusal or neglect to proceed on its behalf.

"When it is shown that the corporation has ceased to exist either in law or in fact, or that it has abandoned its corporate existence by the election of directors and the appointment of officers to manage its affairs, a stockholder may without showing more bring suit on behalf of himself and the other stockholders against the corporation or others having assets belonging to it for the protection of his rights."

In this bill it is alleged that plaintiffs in the aggregate hold $40,725 of the total of $106,000 capital stock actually subscribed for and

issued; that the corporation has suspended its corporate business for more than two years continuously, which, if true, would warrant its dissolution at the instance of the state; that it has not sufficient assets to meet the requirements of the laws of the state permitting it to do business; that it has practically abandoned, as hopeless, the effort to sell sufficient stock to enable it to do so; that in consequence it has sought to secure the turning over to another company by its stockholders of their stock in exchange for that of this other company; that it has invested a considerable portion of the money secured from stock subscriptions in securities with a market value admitted to be less than par and of doubtful value, contrary to the express law of the state, governing insurance companies; that the capital of the company subscribed for investment in what was presumed would be a going, dividend paying company is being dissipated in payment of large salaries and excessive expenditures for office rents, stationery, printing, furniture, and fixtures, aggregating approximately $7,000 annually, with no business done and no hope of doing business in the future wherefrom income would be derivable.

All these facts may be wholly refuted by evidence hereafter taken in the cause, but so long as they are admitted to be true, as they must be upon this motion to discharge the receiver and dismiss the bill, I think they fully disclose the necessity for the intervention of this court of equity. These motions must therefore be overruled. The temporary injunction prayed for will be granted, restraining defendant, its officers and agents, from making any further disposition of the assets of the company until the further order of this court, upon execution of bond in the penalty of $20,000.