HIRSCH et al. v. INDEPENDENT STEEL CO. OF AMERICA et al.

(Circuit Court, S. D. West Virginia. September 19, 1911.)

No. 203.

1. COURTS (§ 489*)—JURISDICTION OF FEDERAL COURTS—SUIT TO DISSOLVE STATE CORPORATION.

Code W. Va. 1906, c. 53, § 57, which confers authority on a state Circuit Court to dissolve a corporation at suit of not less than one-third in interest of its stockholders, does not create a right which a federal court of equity has jurisdiction to enforce, especially where the bill alleges the solvency of the corporation and states no other ground of equity jurisdiction; the dissolution of a corporation created by the state being peculiarly a matter for determination by the tribunal to which the state has committed it.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*

Jurisdiction of federal court as affected by state laws, see note to Barling v. Bank of British North America, 1 C. C. A. 513.]

2. CORPORATIONS (§ 592*)—SUIT FOR DISSOLUTION—SUFFICIENCY OF BILL—WEST VIRGINIA STATUTE.

Under Code W. Va. 1906, c. 53, § 57, authorizing a court to decree a dissolution of a corporation at suit of stockholders "if sufficient cause therefor be shown" as construed by the Supreme Court of Appeals of the state, a sufficient legal cause must be alleged and proved, and a bill which alleges the solvency of the corporation, and does not charge mismanagement, nor other ground except that the corporation is without

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sufficient capital or credit to continue the business for which it was incorporated, is insufficient.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2373–2375, 2378, 2379, 2381, 2390, 2401; Dec. Dig. § 592.*]

3. COURTS (§ 307*)—JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—CONTROVERSY.

A bill by nonresident stockholders and directors against the corporation and resident stockholders and directors praying for the dissolution of the corporation on the ground that it is without sufficient capital to conduct its business, but which does not allege mismanagement nor disagreement between complainants and the corporation or individual defendants, and from which it would appear that their interests are identical, does not disclose a controversy which will give a federal court jurisdiction on the ground of diversity of citizenship.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 850–854; Dec. Dig. § 307.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

4. CORPORATIONS (§ 189*)—STOCKHOLDERS' SUIT—RIGHT TO MAINTAIN.

In matters quoad the corporation, the corporation in the first instance represents all of its stockholders, so that they have no initial right of action against it, and some wrong of omission or commission on the part of those in control must be alleged and proved before a right of action arises in favor of a stockholder against the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 706–722; Dec. Dig. § 189.*

Rights of stockholders to sue or defend on behalf of corporation as dependent on refusal of corporation or officers to act, see note to Eagle Iron Co. v. Colyar, 87 C. C. A. 390.]

5. COURTS (§ 493*)—PRIORITY OF JURISDICTION—FEDERAL AND STATE COURTS.

The institution of suits in a state court to enforce mechanic's lien against real estate of a corporation vests that court with exclusive jurisdiction to hear and determine all controversies with respect to such real estate, and a federal court cannot, pending such suit, entertain a suit for relief which would necessarily interfere with such jurisdiction of the state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1346–1352; Dec. Dig. § 493.*

Conflict of jurisdiction with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

In Equity. Suit by Arthur Hirsch and others against the Independent Steel Company of America and others. On demurrer of Taylor & Robinson to bill. Demurrer sustained.

Campbell, Brown & Davis, for demurrants.
Paul W. Scott and John H. Holt, for plaintiffs.

KELLER, District Judge. The bill in this case was filed by certain stockholders, citizens of Kentucky, against the Independent Steel Company of America, a West Virginia corporation, its other stockholders, and against certain (but not all) of its creditors, seeking the dissolution of the corporation and the winding up of its affairs under the provisions of section 57 of chapter 53 of the Code of West Virginia, which section reads as follows:

"If not less than one-third in interest of the stockholders of a corporation desire to wind up its affairs, they may apply by bill in chancery to the circuit court of the county in which the principal office or place of business

of such corporation is situated, or if there be no such office or place of business in this state, to the circuit court of the county in which the other stockholders, or any one or more of them reside or are found, or in which the property of such corporation or any part of it may be, setting forth in the bill, the grounds of their application; and the court may thereupon proceed according to the principles and usages of equity to hear the matter, and if sufficient cause therefor be shown, to decree a dissolution of the corporation, and make such orders and decrees, and award such injunctions in the cause as justice and equity may require."

The bill, while admitting that the company is without funds or resources with which to prosecute the business for which it was chartered, makes the averment that the company is not insolvent, and sets up certain agreements which go to show that the complainants in the bill are really the owners of all of its capital stock, and that, in consideration of certain moneys advanced by persons termed in the bill as the "syndicate," a large part of the stock of the company (but less than one-half thereof) had been pledged to said syndicate, but not sold to it, and that the board of directors, by agreement of plaintiffs, was now dominated by said syndicate. There is no allegation whatever of any mismanagement by said board of directors or of any friction or altercation between the plaintiffs and the members of said syndicate, nor any suggestion of a reason for the interposition of a court, save the financial condition of the company, and the desire of the plaintiffs to have the affairs of the company wound up and to have the protection of the court against the action of its creditors pending such winding up and dissolution.

The bill sets up that certain judgments had been obtained against the company, and certain executions levied by the sheriff of Wayne county upon personal property of the company, and asked that the plaintiffs in those actions and the sheriff of Wayne county be restrained from selling the property levied upon. It also sets up the fact that suits upon several alleged mechanics' liens had been instituted in the circuit court of Wayne county, W. Va., and that certain actions were pending in said court and in the Circuit Court of the United States for the Southern District of West Virginia upon causes of action which plaintiffs aver are not meritorious. Finally plaintiffs pray for the winding up and dissolution of the corporation, and in the meantime for the appointment of receivers to operate the plant under the direction of the court. Upon this bill Judge Dayton appointed receivers and granted the injunction prayed for, which injunction was later, upon motion, dissolved.

The case now comes before me upon the demurrer of Taylor & Robinson, a partnership which is a party to a suit for the enforcement of a mechanic's lien pending in the circuit court of Wayne county, W. Va. This demurrer sets up five different grounds or reasons why the bill in this cause should be dismissed as insufficient, namely: (1) That a federal court of equity has no jurisdiction of the statutory proceeding under section 57, c. 53, Code of West Virginia, for the dissolution of a corporation. (2) That in any event the bill does not show the "sufficient cause" required by the statute. (3) That there is no controversy shown by the bill between the complainants and the corporation, or between complainants and the defendants designated as

the members of the syndicate, to whom, under the allegations of the bill, the management of the corporation was committed by contract. (4) The citizenship of the complainants as stockholders of the corporation is conclusively presumed to be that of the corporation, and hence there is no jurisdiction in the federal court of a suit in which there is no real controversy between the corporation and the plaintiffs. (5) The bill shows upon its face that the circuit court of Wayne county has prior and exclusive jurisdiction of the real estate of the defendant corporation.

The case has been fully and ably argued by counsel for demurrants and for plaintiffs, and briefs have also been filed to aid the court in reaching its conclusions, and I may say that upon some of the points urged the court is not free from doubt, but upon the whole case I come to the conclusion that the demurrer must be sustained.

[1] Upon the first point urged on demurrer counsel for complainants cite Mott v. Buckhorn Portland Cement Co., 179 Fed. 646, 103 C. C. A. 204; U. S. Shipbuilding Co. v. Conklin, 126 Fed. 132, 60 C. C. A. 680; Land Title & Trust Co. v. Asphalt Co. of America, 127 Fed. 1, 62 C. C. A. 23; Briggs v. Traders' Co. (C. C.) 145 Fed. 254; Stevens v. Empire Casualty Co. (C. C.) 180 Fed. 283. The last two decisions referred to are by Judge Dayton in the Northern District of West Virginia, and the jurisdiction of the court does not seem to have been challenged in either case and the subject is not discussed. The first three cases above cited to my mind have no application to the facts in the case at bar, as the section of the New Jersey statute invoked in those cases did not provide for a dissolution of a corporation. In the case of Mott v. Buckhorn Portland Cement Co. the Circuit Court of Appeals for the Fourth Circuit simply held that, as construed by the Supreme Court of New Jersey, such suit as is provided for in section 65 of the New Jersey corporation act (Laws 1896, p. 298) creates a right which, under proper circumstances, may be enforced in a federal court, and that an intervening stockholder in an ancillary proceeding cannot be heard to question the jurisdiction. But it is to be remembered that the object of that suit was not to obtain a decree of dissolution, but to administer the assets of an alleged insolvent corporation.

In the case of United States Shipbuilding Co. v. Conklin, 126 Fed. 132, 60 C. C. A. 680, the complainants were first-mortgage bondholders and stockholders of the corporation. The jurisdiction was upheld by the Circuit Court of Appeals for the Third Circuit, but the court based its opinion largely upon the twenty-ninth paragraph of the bill, which asserted grounds of relief against the directors on account of mismanagement, and the right of plaintiffs to have canceled certain stock of the corporation, alleged to have been improperly and illegally issued. The court, discussing the jurisdiction question, says:

"By the Corporation Act of the state of New Jersey (Revision 1896, p. 298, §§ 65, 66), it is enacted that, whenever any corporation shall become insolvent, any creditor or stockholder may, by petition or bill of complaint setting forth the facts, apply to the Court of Chancery for a writ of injunction and the appointment of a receiver, and the court, being satisfied by affidavit or otherwise of the sufficiency of the application and of the

truth of the allegations made, may issue an injunction against the corporation and its officers and agents, and may appoint a receiver for the creditors and stockholders of the company. We are not called upon to consider the question whether under this statute a creditor whose claim is not reduced to judgment, and who has no lien, can maintain a bill in equity in the Circuit Court of the United States for the appointment of a receiver of a corporation solely on the ground of the insolvency of the corporation. The complainants here are mortgage bondholders and stockholders. They have a lien upon the property of the defendant corporation created by express contract and an interest in its property which it would seem gives them a standing in a United States court of equity, within the principles enunciated by the Supreme Court in the cases of Scott v. Neely, 140 U. S. 106, 113, 11 Sup. Ct. 712, 36 L. Ed. 358, and Hollins v. Brierfield Coal & Iron Company, 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113. In the former of these cases the court recognized the doctrine that where a statute of a state creates a new equitable right, capable of enforcement by proceedings in conformity with the pleadings and practice in equity, the right will be enforced in the courts of the United States. The court, however, limited the application of the principle thus: 'The general proposition [the court said] as to the enforcement in the federal courts of new equitable rights created by the states is undoubtedly correct, subject, however, to this qualification: That such enforcement does not impair any right conferred, or conflict with any inhibition imposed, by the Constitution or laws of the United States.' "

Judge Lanning, who originally heard the United States Shipbuilding Company Case, had the same case before him again (140 Fed. 219) upon a petition by the receiver to enter a decree dissolving the corporation under the provisions of section 69 of the New Jersey Corporation Acts, and the second point in the syllabus holds that:

· "Section 69 of the New Jersey Corporation Acts, which confers upon the Chancery Court of the state power to dissolve an insolvent corporation and to declare its charter forfeited and void, does not create a right which is enforceable in a federal court of equity; the dissolution of a corporation created by the state being peculiarly a matter for determination by the tribunal to which the state has committed it."

To the same effect is Gaylord v. Ft. Wayne, M. & C. R. Co.; Fed. Cas. No. 5,284, which latter case will be hereafter referred to upon another point.

These three New Jersey cases all proceeded upon the theory that the cases made by the bills were within the equitable jurisdiction of the federal courts under the doctrine laid down by Mr. Justice Bradley in Graham v. Railroad Company, 102 U. S. 148, 161, 26 L. Ed. 106, where he says:

"When a corporation becomes insolvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors. A court of equity, at the instance of the proper parties, will make those funds trust funds which in other circumstances are as much the absolute property of the corporation as any man's property is his."

In the New Jersey cases cited in complainant's brief there was no allegation of solvency of the corporation, and in the United States Shipbuilding Company Case and the case against the Asphalt Company of America there were distinct averments of insolvency of the defendant companies, and in the case against the Buckhorn Portland Cement Company there were specific averments tending to show that the company was insolvent. In the case at bar there is no averment that the company is insolvent, but, on the other hand, the averments

of the bill are carefully drawn to negative that conclusion, and the sole relief prayed for is predicated upon section 57 of chapter 53 of the Code of West Virginia.

As to that section, I am of the same opinion as Judge Lanning as to the inability of the federal courts to decree a dissolution of the corporation, and, if that relief cannot be afforded, the whole case falls, as that is the sole object and purpose disclosed by the bill.

[2] 2. The bill does not show the "sufficient cause" required by the statute.

In construing the meaning and effect of section 57 of chapter 53 of the Code of West Virginia, even if a federal court had power to afford the relief contemplated by that section, such court would be bound by the construction given to the statute by the Supreme Court of Appeals of the state. In considering the meaning of this section and of section 58 of chapter 53 of the Code the court said:

"Before a bill by a stockholder under section 57 or by a director or stockholder under section 58 of chapter 53 of the Code will be entertained by a court of equity to appoint a receiver and wind up the affairs of the corporation, good cause must be shown therefor, and without allegation and proof thereof a bill for that purpose will be dismissed." Ward v. Hotel Randolph Co., 65 W. Va. 721, 63 S. E. 613.

In the above case the allegations of the bill are stated by the court as follows:

"Briefly summarized, they amount to the charge of possible insolvency due to mismanagement and diverting of the funds of the company."

In the case at bar the only charge is that the company is without capital or sufficient credit and is rapidly drifting toward a condition of insolvency. There is no charge of mismanagement by the officers, or of a demand and refusal of the corporation to itself take measures for its relief. It appears that the bill does not make a case cognizable by a state court under the interpretation of this statute laid down by the Supreme Court of Appeals. To the same general effect, see Wheeler v. Pullman Iron & Steel Co., 143 Ill. 197, 32 N. E. 420, 17 L. R. A. 818, in which the Supreme Court of the state of Illinois held that "the good cause" for which a court of equity might decree the dissolution of a corporation under the provisions of Rev. St. 1891, c. 32, § 25, means "a legal cause, a cause for which the sovereign authority might be allowed to resume the franchise granted." I am of opinion that the bill does not state sufficient grounds of relief under the provisions of chapter 53, § 57, even if this court could entertain jurisdiction under that section.

[3] 3. The next ground of demurrer is that there is no controversy disclosed by the bill between the complainants and the corporation.

By the very terms of the Judiciary Act of 1789, ever since incorporated into the several amendments, jurisdiction in the federal courts founded on diversity of citizenship is limited to civil cases where the matter in controversy is of a certain sum or value, and is between citizens of different states. "The theory upon which jurisdiction is conferred on the courts of the United States in controversies between citizens of different states has its foundation in the supposition that,

possibly, the state tribunal might not be impartial between their own citizens and foreigners." Pease v. Peck, 59 U. S. 595–601, 15 L. Ed. 520. There is here no allegation of any domination of the corporation adverse to the interests of the plaintiffs. In fact, the plaintiffs controlled the corporation until they voluntarily contracted with the so-called "syndicate" (largely composed of citizens of West Virginia) to relinquish to it a majority of the board of directors. There is no suggestion that these syndicate directors (who under the laws of West Virginia, must be stockholders in the company) are antagonistic to the plaintiffs, but, on the contrary, it appears from the allegations of the bill that John C. C. Mayo, Arthur Hirsch, E. A. Henry, and Henry Hirsch, all of whom are plaintiffs, are also of the board of directors, and that their fellow members on the board, C. L. Ritter, C. W. Watts, Edwin Mann, B. W. Foster, H. B. Hagan, Joseph S. Miller, G. A. Northcott, I. J. Harshbarger, U. B. Buskirk, H. T. Lovett, and E. E. Williams, are all made defendants to the bill, though the whole bill indicates that their interests are identical with those of the plaintiffs. Also Paul W. Scott as one of the members of the syndicate referred to in the bill, and with reference to whose claims it is perfectly evident that the other creditors of the corporation will have serious contentions, is placed as a defendant to the bill (being at the same time of counsel for the plaintiffs), and John C. C. Mayo, another member of the said syndicate, is made a plaintiff in the same bill.

In Dawson v. Columbia Trust Co., 197 U. S. 181, 25 Sup. Ct. 422, 49 L. Ed. 716, it was said:

"When the arrangement of the parties is merely a contrivance between friends for the purpose of founding a jurisdiction which otherwise would not exist, the device cannot be allowed to succeed."

[4] 4. The next ground of demurrer is that under the conclusive legal presumption adopted by the Supreme Court that a corporation is composed of citizens of the state wherein they are incorporated no jurisdiction can be taken of a suit by stockholders against the corporation. The doctrine whereby the federal courts have upheld their jurisdiction as applied to suits in which a corporation is a necessary party has undergone various changes since the holding in Bank of United States v. Deveaux, 9 U. S. 61, 3 L. Ed. 38, in which Chief Justice Marshall announced the doctrine that a corporation aggregate composed of citizens of one state may sue (or be sued by) a citizen of another state in the Circuit Court of the United States. Very many of the cases developing the present doctrine are cited and explained in the opinion by Mr. Justice Shiras in St. Louis & S. F. R. Co. v. James, 161 U. S. 545, 16 Sup. Ct. 621, 40 L. Ed. 802, and the law as laid down in that case in regard to the presumption of citizenship is stated as follows:

"The presumption that a corporation is composed of citizens of the state which created it accompanies such corporation when it does business in another state, and it may sue or be sued in the federal courts in such other state as a citizen of the state of its original creation. We are now asked to extend the doctrine of indisputable citizenship, so that if a corporation of one state, indisputably taken, for the purpose of federal jurisdiction, to be

composed of citizens of such state, is authorized by the law of another state to do business therein, and to be endowed for local purposes, with all the powers and privileges of a domestic corporation, such adopted corporation shall be deemed to be composed of citizens of the second state, in such a sense as to confer jurisdiction on the federal courts at the suit of a citizen of the state of its original creation. We are unwilling to sanction a doctrine which, as heretofore established, went to the very verge of judicial power. That doctrine began, as we have seen, in the assumption that state corporations were composed of citizens of the state which created them; but such assumption was one of fact, and was the subject of allegation and traverse, and thus the jurisdiction of the federal courts might be defeated. Then, after a long contest in this court, it was settled that the presumption of citizenship is one of law, not to be defeated by allegation or evidence to the contrary. There we are content to leave it."

To the same effect, see Southern Ry. Co. v. Allison, 190 U. S. 326, 23 Sup. Ct. 713, 47 L. Ed. 1078.

The case of Doctor v. Harrington, 196 U. S. 579, 25 Sup. Ct. 355, 49 L. Ed. 606, relied upon by complainants, is doubtless authority for the proposition that where the control of the corporation is in hands antagonistic to plaintiffs, and the corporation could, but refuses to, take the action necessary for relief, a suit in equity will lie, on the ground of diversity of citizenship, at the suit of a stockholder under the provisions of equity rule No. 94 (29 Sup. Ct. xxxvii), even though the ultimate interest of the corporation and the plaintiff stockholder may be the same. The case is not, in my judgment, authority for the proposition that stockholders may bring a suit in equity on the ground of diversity of citizenship, where no allegation is made to show an antagonistic control of the corporation, or an effort made to induce the corporation to take the desired action. It is my opinion that in matters quoad the corporation the corporation in the first instance not only stands for and represents all of its stockholders so that they have no initial right of action, but that in respect of such matters there is a necessity to allege and prove some wrong of omission or commission on the part of those in control of the corporation before a right of action arises in favor of a stockholder against the corporation, and I do not think that Doctor v. Harrington is authority for more than this.

[5] 5. The bill shows upon its face that the circuit court of Wayne county, W. Va., has prior and exclusive jurisdiction over the real estate belonging to the defendant corporation. Clause 11 of the bill avers that prior to the institution of the cause at bar the Hill-Clutch Company had instituted a suit for the enforcement of a mechanic's lien against the real estate of the defendant; that the demurrants, Taylor & Robinson, had also filed a mechanic's lien amounting to over $8,000, and had filed an answer or petition in the suit instituted by the Hill-Clutch Company asking to have their claim adjudged a lien upon the said real estate; and that other mechanic lien creditors had impleaded themselves in such suit.

Demurrants contend that these facts invested the circuit court of Wayne county with prior and exclusive jurisdiction over the said real estate, and that neither this court, nor any other, should assert jurisdiction over such real estate in view of the allegations of the bill referred to. In Gaylord et al. v. Ft. Wayne M. & C. R. Co., Fed.

Cas. No. 5,284, heard before a full circuit bench consisting of Drummond, Circuit Judge, and Hopkins and Blodgett, District Judges, it was held that the court which first takes jurisdiction of a controversy and the parties is entitled to retain it to its final termination, and also to take possession of the res, subject of the controversy, exclusive of all interference from any other court of concurrent jurisdiction; and it is not essential that the court first taking jurisdiction of the controversy should also first take the actual possession of the res. To the same effect is the opinion of the Supreme Court of the United States in Heidritter v. Oilcloth Co., 112 U. S. 294, 5 Sup. Ct. 135, 28 L. Ed. 729, 732, q. v. In Farmers' Loan, etc., Co. v. Lake St. Elevated Railroad Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667, it was held that the filing of a bill for foreclosure of a mortgage in a federal court, and the issuing of a subpœna in the suit, give jurisdiction as against an action subsequently commenced in a state court by a summons which was served before service of the writ of subpœna issued by the federal court. In that case the court, by Mr. Justice Shiras, referring to the rule that possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, says:

"Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature where in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of special importance in its application to federal and state courts."

In that case the suit in the state court was filed on the same day as the bill in the federal court, and, as before stated, the process was executed first in the suit in the state court. No physical possession had been taken by the federal court, but it was held that the prior filing of the bill was sufficient to invest the federal court with exclusive jurisdiction over the property of the defendant corporation. The application of the principle to the present case so far as regards the real estate of the defendant is obvious, and I must hold that this court could not take possession of the real estate, affected by the mechanic's lien suit filed in the circuit court of Wayne County, and, as the jurisdiction of that property would be essential to the only relief prayed for in the bill, that, even were there no other objections, the bill discloses that the court could not at this time entertain the suit.

However, enough has been said to show that in my judgment there are other and insuperable objections to the exercise of the jurisdiction invoked.

It results that the receivers heretofore appointed must be discharged and directed to turn over the property in their hands to the defendant corporation, and that the bill filed must be dismissed, at the costs of plaintiffs.