Joy C. TWEEL, Plaintiff,

v.

Harold L. FRANKEL, Doris N. Frankel and United Realty Corporation, a West Virginia Corporation, Defendants.

Civ. A. No. 77–3302–H.

United States District Court, S. D. West Virginia, Huntington Division.

Jan. 3, 1978.

Ray L. Hampton, II, Barrett, Chafin & Lowry, Huntington, W. Va., for plaintiff.

**1072**

Herbert H. Henderson, Huntington, W. Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

This action came on for hearing before this Court on December 13, 1977, at Huntington, upon the Defendants' motion to dismiss or in the alternative, motion to stay these proceedings pending the outcome of similar litigation in the Circuit Court of Cabell County, West Virginia, a state court. The motions are presented on the pleadings, stipulations of counsel, evidence taken at the hearing, arguments of counsel and briefs submitted to the Court.

### I. FACTS

By her complaint filed in this Court on December 7, 1977, the Plaintiff invokes the diversity jurisdiction of this Court alleging her nonresidence and the residence of the Defendants in the State of West Virginia, and claiming a controversy between the parties in an amount in excess of $10,000, exclusive of costs.

She and the individual Defendants, the Frankels, own 100% of the outstanding shares of stock in the Defendant United Realty Corporation. This corporation owns an operating subsidiary, Continental Realty Corporation, and also operates the Route 60 East Holiday Inn in Huntington, West Virginia. Continental Realty Corporation, which heretofore operated the Downtown Holiday Inn in Huntington, is now in receivership under Chapter XI, Reorganization Proceedings pursuant to an order of the United States Bankruptcy Court for the Southern District of West Virginia.

Both parties concede that, inasmuch as the Plaintiff is a 50% shareholder in United Realty Corporation and Harold Frankel and Doris Frankel are the owners of the remaining 50% of the outstanding shares of the corporation, they are deadlocked in the management of corporate affairs.

By reason of the deadlock, the Plaintiff alleges that the individual Defendants have failed to call, or refused to hold regularly scheduled directors' and shareholders' meetings, and that the individual Defendants have operated the corporate affairs of United Realty in an unauthorized manner since July 1, 1975. She further alleges that the present and past acts of the individual Defendants as managing directors of the Defendant corporation, have been and are illegal, oppressive and fraudulent and cause her, as 50% shareholder, irreparable harm.

In addition to the foregoing, she alleges that the individual Defendants: have illegally placed a relative on the Board of Directors; have failed and refused to distribute income and profits by way of dividends; have illegally and unlawfully expended corporate funds for the payment of corporate debts of Continental Realty Corporation; have forged the signatures of the Plaintiff and her husband as guarantors of negotiable instruments in favor of third parties; have caused to be prepared and disseminated false, fraudulent and misleading income and financial statements of the Defendant corporation; have refused to allow the Plaintiff, as a shareholder, to view and examine the corporate and financial records of the Defendant corporation; have employed family retainers to perform certain services for the Defendant corporation in derogation of a Board of Directors' resolution; have failed and refused to honor legitimate obligations and contracts of the Defendant corporation to third parties; have illegally expended corporate funds for legal and accounting representation in personal litigation of the individual Defendants; have withheld credit card privileges of officers and consultants of Defendant corporation; have unlawfully, illegally and without authorization converted to the personal use of the individual Defendants corporate assets, consisting of money and property; have unlawfully, illegally and without authorization invaded corporate funds by the payment of excess wages and personal expenditures; have unlawfully and illegally violated the liquor laws of the State of West Virginia in the purchase and selling of alcoholic beverages on the premises of the Defendant corporation; have failed to meet

current and long-term obligations of the Defendant corporation; and, have jeopardized personal assets of the Plaintiff as guarantor on United Realty Corporation debts.

The Plaintiff claims further that she has and will suffer irreparable damages for which the remedy at law is totally inadequate because the individual Defendants are attempting to make themselves judgment proof by securing mortgages on property in the amount of $100,000, and that these Defendants have insufficient unmortgaged assets from which a judgment in Plaintiff's favor could be satisfied.

Invoking the appropriate provisions of the West Virginia Corporation Act, *W.Va. Code*, 1931, 31–1–41, *et seq.*, as amended Plaintiff seeks a temporary restraining order or preliminary injunction enjoining and restraining the individual Defendants from operating or coming on the premises known as Holiday Inn East, Route U.S. 60 or having further access to the business and financial records of the United Realty Corporation, or receiving or expending any monies belonging to the corporation, or from utilizing any monies of the corporation for their personal defense of this action. Secondly, she demands a receiver be appointed to operate the business of the corporation for and on behalf of the stockholders and to supervise the liquidation and dissolution of the corporation. Finally, she demands that the Court appoint legal counsel to defend the corporation independent of representation of the parties to this action.

The Defendants' motions to dismiss or, in the alternative, to stay these proceedings are founded upon the fact that on December 16, 1976, the Plaintiff in this action instituted a similar civil action in the Circuit Court of Cabell County against the Defendants herein, making substantially similar allegations and demanding relief essentially similar to that which is sought here.

It is conceded by counsel for the Plaintiff that, then being unaware of the appropriate provisions of the West Virginia Corporation Act, the Plaintiff sounded her state action complaint under the general equity powers of the court, and in addition, and unlike this action, also sought specific performance of certain contracts and made certain damage claims at law. It is apparent to the Court that with but slight amendments, the State and Federal actions could be identically conformed.

In the state action, on September 2, 1977, the Plaintiff moved that court for the same temporary relief which is now sought in this Court, i. e., an injunction against the Frankels, the appointment of a receiver and the appointment of independent counsel to represent the interest of the corporation (or the receiver) as opposed to the potentially adverse interest of the Frankels or the Plaintiff. During the pendency of that motion the Plaintiff and others, at her direction, seized physical control of the Route 60 East Holiday Inn, including the books, records and assets of the business, without authorization of the court. As a result of this self-help remedy, the state court on November 23, 1977, granted an injunction in favor of the Defendants, who are the same Defendants in this action, requiring the Plaintiff and others acting for her to return all of the seized property forthwith and to vacate the premises. The state court also ordered the Plaintiff to post a $50,000 bond to satisfy the loss, if any, of monies, property and assets of the United Realty Corporation, or to satisfy damages suffered as a result of the impromptu takeover. The Plaintiff posted the bond.

On November 30, 1977, the Plaintiff in the state action, who is also the Plaintiff here, renewed her motions seeking the same temporary relief as is sought herein. The state court held a hearing on December 2, 1977, and ordered the consolidation of the state action with another state action previously brought by Plaintiff's husband arising out of the same subject matter, but which seeks damages for breach of certain contracts. The state court also required the Frankels to post an appropriate bond to protect the Plaintiff's interest in the state actions. That bond was likewise posted.

To this date, the state court has not ruled upon Plaintiff's motions seeking injunction, the appointment of a receiver and the appointment of independent counsel. And according to the allegations of the Plaintiff in this action, the state court will not be in a position to act upon the matter until sometime after June, 1978.

## II.  ISSUE

The question presented is whether it is appropriate for this Court at this time to assume jurisdiction of the controversy, or to dismiss the action, or to stay further proceedings in this action pending further action by the state court.

## III.  OPINION

The Plaintiff has properly invoked the diversity jurisdiction of this Court. 28 U.S.C. § 1332. The Court has personal jurisdiction over the parties and has subject matter jurisdiction to proceed as authorized by *West Virginia Code*, Chapter 31, Article 1, Section 41, *et seq.*, as amended. The foregoing leads one to conclude that, but for the pendency of the similar state action between the parties, this Court would have no choice but to assume jurisdiction in this case and proceed to disposition. Nevertheless, the Defendants strongly urge that, in view of the state proceedings, this Court should decline jurisdiction by dismissing the action, or in the alternative, stay the action pending further proceedings in the state court. On the other hand, the Plaintiff, while freely acknowledging her previous choice of the state forum through commencement of action there over a year ago, demands that this Court exercise its concurrent jurisdiction and proceed to disposition in the case because she will be irreparably harmed if she cannot secure an appropriate hearing in the state action before June, 1978.

This Court begins with the premise that its jurisdiction is a limited one, as prescribed by the Constitution and the Acts of Congress, and that this delicate area of federalism requires it to proceed with caution and with a full awareness with the principles of comity. Nevertheless, declination of jurisdiction is the exception rather than the rule. Only recently the Supreme Court had occasion to reaffirm the general rule applicable to these cases:

"The pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction . . .." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

There are three recognized exceptions which may cause the federal courts to decline appropriately to proceed in cases although the federal court has jurisdiction under the Constitution and the statutes.

The first of these, known as the *"Pullman*-type abstention", is to decline jurisdiction to avoid decision of a federal constitutional question where the case may be disposed of on questions of state law. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). There is no federal, nor for that matter, state constitutional question involved in the instant case.

Secondly, the federal court, under the exception known as the *"Burford*-type abstention", may choose to decline jurisdiction to avoid needless conflict with the administration by a state of its own affairs. *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Diaz v. Diaz et al.*, 568 F.2d 1061 (4th Cir. 1977). Although the instant litigation has aspects of a *"Burford*-type" situation in that it involves procedures under the state corporation statute and it may involve the dissolution of a corporation, purely a creature of state statute, the case does not turn on that point. Among cases which have applied the *Burford* rationale, it has been held that a federal court should not take jurisdiction in a receivership proceeding where the state law has a comprehensive procedure for liquidation of corporations of the sort involved and where federal court involvement would involve the restraint of authority vested in state officers. *Pennsylvania v. Williams*, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841

(1935); and see *A. F. A. Distributing Co. v. Pearl Brewing Co.,* 470 F.2d 1210 (4th Cir. 1973). The facts of the *Williams* case are clearly inapposite to those at hand because there the state court receiver, a public official in Pennsylvania, had previously assumed jurisdiction of the putative corporation and was in the process of government-instigated dissolution proceedings when the abortive exercise of federal jurisdiction occurred. In the instant litigation, it is to be noted that no receiver has been appointed although application has been made to the state court for the appointment. Likewise, the procedure for dissolution, although authorized by the West Virginia Corporation Act, represents legislation which is "state action" in the most neutral sense in that it merely provides a vehicle for shareholders, directors, creditors and others to engage in private litigation over corporate affairs. This Court does not consider it appropriate to abstain for a *Burford* reason.

Third, federal courts are required to decline jurisdiction to avoid restraint or interference with pending state criminal proceedings where there is an absence of bad faith or harassment and the criminal statute involved is not patently invalid. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The "*Younger* -type abstention" obviously is inapplicable to the facts at hand.

Professor Wright also suggests two additional avenues of abstention which have received some, although not substantial and consistent, credibility in the courts. Wright, *Law Fed. Cts.,* § 52 (3rd Ed. 1976). First, federal courts have declined to exercise jurisdiction and thus to defer to state courts in private litigation to avoid resolution of difficult and unsettled questions of state law in areas of transcendent importance. See *Louisiana Power and Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). The more often applied practice, however, is to assume jurisdiction in this area. The lead case was, and perhaps still is, *Meredith v. City of Winter Haven,* 320 U.S. 228, 64 S.Ct.

7, 88 L.Ed. 9 (1943). In that decision Chief Justice Stone opined:

> "The difficulties of ascertaining what the state courts may hereafter determine the state law to be do not in themselves afford a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case which is properly brought to it for decision." *Id.* 320 U.S. 228, at 234, 64 S.Ct. 7, at 11.

Subsequent to the intervening decisions of *City of Thibodaux* and *Frank Mashuda,* the *Meredith* principle was reaffirmed in *McNeese v. Board of Education for Community School District 187, Cahokia, Ill.,* 373 U.S. 668, 673, note 5, 83 S.Ct. 1433, 1436, note 5, 10 L.Ed.2d 622, where the court said:

> "Yet where Congress creates a head of federal jurisdiction which entails a responsibility to adjudicate the claim on the basis of state law, viz., diversity of citizenship, as was true in *Meredith v. Winter Haven* [citations omitted], we hold that difficulties and perplexities of state law are no reason for referral of the problem to the state court . . .."

Most recently the Supreme Court breathed new life in *Meredith* by citing it with approval in the *Colorado River Water Conservation District* case, *supra,* 424 U.S. at 816, 96 S.Ct. at 1245:

> ". . . the mere potential for conflict in the results of adjudications, does not, without more, warrant staying the exercise of federal jurisdiction."

This Circuit clearly follows the *Meredith* view. *Wohl v. Keene,* 476 F.2d 171 (4th Cir. 1973); *Martin v. State Farm Mutual Ins. Co.,* 375 F.2d 720, 722 (4th Cir. 1967). See e. g. *Kline v. Wheels by Kinney, Inc.,* 464 F.2d 184 (4th Cir. 1972). This Court also considers the *Thibodaux* type of abstention principle inapplicable to the facts of this case because it does not consider the state law regarding shareholders actions, dissolution and the like to be complex or unsettled. Although the West Virginia Corporation Act, *W.Va.Code* 1931, 31–1–1, *et seq.,* as amended, was adopted as recently as 1974 and amended in 1975, it appears to be plain

and unambiguous and it provides simple and efficacious procedures in those areas which are of concern in this case. Neither a state nor a federal court would be reluctant to apply the statutes involved in the proper case.

The second but only occasionally employed principle of abstention suggested by Professor Wright is that the federal court may decline to exercise its jurisdiction because it is inconvenient because the federal court is too busy. This principle does not find support in the decisions of the Supreme Court. "The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience." *Meredith v. Winter Haven, supra,* 320 U.S. 228, 234, 64 S.Ct. 711. Accord: *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 344, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976). This Court likewise does not consider the "press of business" sufficient excuse for declination of legitimate jurisdiction.

None of the usual abstention doctrines, approved or practiced, apply to resolve the issue of this case. Nevertheless, doctrines of comity rather than abstention permit dismissal or a stay of proceedings in certain unusual cases. See for example *Colorado River Water Conservation District v. United States, supra.* In all cases involving a specific piece of property any court's jurisdiction is qualified by a rule which antedates the abstention doctrines: that when a court of competent jurisdiction has obtained possession, custody, or control of property, that possession may not be disturbed by any other court. *See generally,* 14 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3631 (1976). This principle is not limited in application to those factual situations where the seizure of the *res* has occurred. *United States v. Bank of New York & Trust Co.,* 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936). The principle is reflected in the most frequently quoted statement of the rule, appearing in *Harkin v. Brundage,* 276 U.S. 36, 43, 48 S.Ct. 268, 271, 72 L.Ed. 457 (1928):

"As between two courts of concurrent and coordinate jurisdiction, the court which first obtains jurisdiction and constructive possession of property by filing the bill is entitled to retain it without interference and cannot be deprived of its right to do so, because it may not have obtained prior physical possession by its receiver of the property in dispute; . . . ."

This test is generally accepted and utilized by courts faced with a conflict of jurisdiction. *Princess Lida of Thurn & Taxis v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1938); *Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader,* 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935); *Hirsch v. Independent Steel Co. of America,* 196 F. 104 (S.D.W.Va. 1911); but cf. *Empire Trust Co. v. Brooks,* 232 F. 641 (5th Cir. 1916).

In the case *sub judice* it is and will be necessary for the Court which entertains this litigation to have control of the *res,* i. e., the United Realty Corporation. The case in its present posture in this Court and in the similar litigation now pending in the state court requires the exercise of a court's *quasi in rem* jurisdiction, and necessarily the control of the property which is the quintessential subject of the litigation. *Amar v. Garnier Enterprises, Inc.,* 41 F.R.D. 211 (D.C.Cal.1966); *Hirsch v. Independent Steel Co. of America, supra.* The court in the similar state litigation has, through its exercise of injunctive powers, assumed jurisdiction of the *res.* Although it has not to this point in time determined to appoint a receiver or take other action which it may deem appropriate, it has directed the Plaintiff, Joy Tweel, to return corporate property such as books, money and other things necessary to operate the corporation to the Defendants. This judicial exercise of control over the *res,* however minimal, coupled with the subject matter of the state litigation and the relief demanded therein necessarily requires that this Court stay its hand pending further action of the state court.[1]

---

1. It is to be noted that the West Virginia Corporation Act allowing the appointment of a receiver provides, *inter alia* : "The court appointing such receiver shall have exclusive jurisdiction of the corporation and its property, wherever situated." *W.Va.Code,* 1931, § 31–1–42, as amended.

See *Amdur v. Lizars*, 372 F.2d 103 (4th Cir. 1967); *General Tire and Rubber Co. v. Watkins*, 373 F.2d 361 (4th Cir. 1967); and cf. *Wheeler v. Adams*, 322 F.Supp. 645 (D.Md. 1971). This Court recognizes that the state court has the power to protect its *in rem* or *quasi in rem* jurisdiction by enjoining a federal court's concurrent exercise of jurisdiction. *Donovan v. City of Dallas*, 377 U.S. 408, 412, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964).

In cases of this nature where the court of coordinate jurisdiction has or could exercise control of the *res*, and the second court defers to avoid interference with the prior litigation, dismissal of the action rather than retention of jurisdiction pending a state determination is normally appropriate. See *Colorado River Water Conservation District v. United States, supra.* Nevertheless, this Court may retain jurisdiction against the possibility that the state court chooses not to exercise jurisdiction or that something unforeseen may delay a prompt state court determination. *Kaiser Steel Corp. v. W. S. Ranch Co.*, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968); *Louisiana Power and Light Co. v. City of Thibodaux, supra; Amdur v. Lizars, supra.*

Accordingly, this Court considers it appropriate to deny the Defendants' motion to dismiss and to grant the Defendants' motion to stay; it is so ORDERED.