Israel **WEINSTOCK, et al., Plaintiffs,**

v.

**CLEARY, GOTTLIEB, STEEN
& HAMILTON, et al.,
Defendants.**

**No. 92 Civ. 7557 (LAP).**

United States District Court,
S.D. New York.

March 8, 1993.

Order. Denying Reargument May 4, 1993.

Weinstock, Joseph & Farley, P.C. by Israel Weinstock, Peter A. Joseph, Joel Farley, New York City, for plaintiffs.

Wachtell, Lipton, Rosen & Katz by Warren R. Stern, New York City, for Cleary, Gottlieb, Steen & Hamilton.

## OPINION AND ORDER

PRESKA, District Judge.

Defendant Cleary, Gottlieb, Steen & Hamilton ("Cleary") moves to dismiss the amended complaint on three grounds: (1) the order of another court bars plaintiffs from proceeding on their claims in this action; (2) for reasons of judicial administration, this Court should decline to exercise its jurisdiction in deference to concurrent state proceedings; and (3) plaintiffs fail to state a federal claim, and the Court should not exercise jurisdiction over the pendent state law claims. For the reasons stated below, Cleary's motion is granted and the amended complaint is dismissed.

## BACKGROUND

This action concerns the relationships among several parties involved in numerous transactions and lawsuits, some of which predate this action by over a decade. Apparent from the eighty-page amended complaint and the fervor with which the parties argue their positions, many of the parties share great enmity for each other; as might be expected, a tale of some interest lies behind this dispute.

The central figure in this action is plaintiff, Israel Weinstock ("Weinstock").[1] In the early 1980's, Weinstock, an attorney, represented Realty Corp. in an action, *4200 Ave. K Realty Corp. v. 4200 Realty Corp.*, No. 7604/80 (N.Y.Sup.Ct. Kings County) (the "specific performance action"), seeking specific performance of a contract involving the purchase of two Brooklyn properties (the "Brooklyn properties"). In December 1984, Jack Walker ("Walker"), a defendant herein and allegedly the sole owner of Realty Corp.

---

1. Although three plaintiffs exist formally, Weinstock is clearly the motivating force behind the institution of this action. The amended complaint alleges that JB Trading International, Ltd. ("JB Trading") is a nominee of Weinstock, Am. Compl. ¶ 5, and that Weinstock and JB Trading own 4200 Avenue K Realty Corp. ("Realty Corp."). Am.Compl. ¶ 1.

at the time,[2] allegedly transferred 20% of the stock of Realty Corp. to Weinstock in exchange for Weinstock's continued representation of Realty Corp. in the specific performance action.

Walker allegedly transferred the other 80% of the stock of Realty Corp. to Weinstock and JB Trading in February 1985. Walker allegedly made this transfer in connection with the settlement of an action brought by Walker against Weinstock, *Walker v. Weinstock*, No. 15210/84 (N.Y.Sup.Ct. Nassau County) (the "Nassau County action"). The Nassau County action concerned allegations by Walker that Weinstock had acted improperly while representing Walker in connection with the purchase of property in Nassau County. In consideration for 80% of the stock of Realty Corp. and Walker's stipulation to the dismissal of the Nassau County action with prejudice,[3] Weinstock allegedly waived any claims he held against Walker for defamation and the like arising out of the Nassau County action.

In September 1986, Walker, Handler, and the Yeshiva instituted suit against Weinstock and JB Trading, *Walker v. Weinstock*, No. 27600/86 (N.Y.Sup.Ct. Kings County) (the "Kings County action"), in which they sought, *inter alia*, a declaration that they owned 100% of Realty Corp. Cleary represented Handler and the Yeshiva in the Kings County action,[4] and Schlam Stone & Dolan, a defendant herein, represented Walker.

Also in September 1986, Realty Corp. received an appellate ruling in its favor in the specific performance action. *4200 Ave. K Realty Corp. v. 4200 Realty Co.*, 123 A.D.2d 419, 506 N.Y.S.2d 723 (2d Dep't 1986). By this time, however, Weinstock, who remained counsel for Realty Corp. in the specific performance action, had become seriously ill and was unable to conduct his affairs. As a consequence of Weinstock's illness, Cleary was substituted as counsel for Realty Corp. in the specific performance action.[5]

Weinstock's claims against Cleary in the instant action arise in large part out of a letter dated October 21, 1986 from George Weisz ("Weisz"), a partner at Cleary, to Toby Stone, an associate of Weinstock, setting out a four-point agreement between Cleary and Weinstock (the "substitution agreement").[6]

---

**2.** As explained further below, several issues regarding the ownership of Realty Corp. are disputed by the parties. One issue concerns whether Emmerich Handler ("Handler"), a defendant herein, and the Kamenitzer Yeshiva (the "Yeshiva") own a portion of Realty Corp. If Handler and the Yeshiva held an interest in Realty Corp. in December 1984, then Walker obviously did not own 100% of Realty Corp. at that time.

**3.** In addition, Walker and his wife, Anita Walker, also a defendant herein, allegedly assigned to JB Trading their 65% combined interest in a limited partnership known as Glenwood Estates Associates ("Glenwood Estates"). At the time, Glenwood Estates allegedly held a leasehold on certain property in Yonkers (the "Yonkers property").

**4.** Cleary appears to have ceased representing Handler and the Yeshiva in or before September 1991.

**5.** The consent to substitution of counsel is signed by Walker and Handler on behalf of Realty Corp. and by Weinstock as retiring attorney.

**6.** The letter states:

(a) [Cleary] will follow up on the September 29, 1986 decision of the Appellate Division, Second Department, so as to cause a closing of the sale of the [Brooklyn properties] to take place as promptly as possible; in that connection, [Cleary] undertake[s] to contest any motion by the defendants for leave to appeal, or any appeal from the Appellate Division's decision;

(b) At the aforementioned closing, [Cleary] will cause title to the real property in question to be taken in the name of [Realty Corp.];

(c) [Cleary] will represent [Realty Corp.] in the accounting proceeding directed by the Appellate Division and will, should that accounting proceeding result in a payment of money to [Realty Corp.], cause that money to be placed in a corporate bank account in its name;

(d) [Cleary] will see to it that pending a final determination of the [Kings County action], either by final judgment or by settlement, that

(i) fee title will remain in [Realty Corp.], which will not transfer or encumber the title to the [Brooklyn properties], except insofar as it may be necessary or appropriate to refinance the mortgage and obtain a first mortgage from a lending institution;

(ii) the status quo will be maintained as to the [Brooklyn properties] with, insofar as it may be under [Cleary's] control, no material change in circumstance;

(iii) the corporate bank account which may be opened to receive the money referred to in subparagraph (c) above, as well as any excess

As described below, Weinstock alleges in this action that Cleary has failed to comply with the terms of the substitution agreement.

Following the substitution of Cleary as counsel for Realty Corp., Realty Corp. allegedly refinanced the Brooklyn properties in November 1987 on the basis of a falsified loan application to First Nationwide Bank, a defendant herein. The loan application allegedly was false because, *inter alia*, defendants Samuel Roth and Rita Handler stated that they owned 100% of the stock of Realty Corp. Handler allegedly appropriated a portion of the loan proceeds thus acquired to pay fees owed Cleary. In addition, Realty Corp. allegedly transferred title to the Brooklyn properties in December 1987 to 4200 Avenue K Associates ("Associates"), a limited partnership also a defendant herein.

Weinstock appears only to have recovered sufficiently from his illness to protect his interests in or around February 1988 when he wrote to Cleary inquiring as to the Brooklyn properties. Weinstock and Cleary then embarked upon an exchange of correspondence concerning the Brooklyn properties and Weinstock's contention that Cleary owed him a fiduciary obligation in regard to the Brooklyn properties arising out of the substitution agreement. Put mildly, the correspondence reflects diametrically opposed views as to whether Cleary met its obligations under the substitution agreement; unsurprisingly, the conflict between Weinstock and Cleary as represented in the correspondence appears to take root in the Kings County action and the question of who owns Realty Corp.

The Kings County action in fact appears to have become revitalized with Weinstock's return to his affairs. In January 1988, Weinstock answered the complaint and asserted six counterclaims, three relating directly to Weinstock's alleged interest in Realty Corp.

and the Brooklyn properties.[7] In May 1988, approximately two months after Weinstock warned Cleary that he might take legal action in connection with the content of their correspondence described above, Weinstock and JB Trading sought a temporary restraining order in the Kings County action seeking, *inter alia*, to enjoin Walker, Handler, and the Yeshiva from taking any action affecting Realty Corp. or the Brooklyn properties and to enjoin Cleary from representing Realty Corp. The motion was denied in all respects with prejudice in October 1988.

In February 1990, an order issued in the Kings County action denying with prejudice a motion by Weinstock and JB Trading seeking an accounting but referring to a referee the issue of whether Weinstock owns 20% of Realty Corp. In June 1990, a motion by Weinstock and JB Trading seeking reargument of their motion for an accounting was denied. At about this time, Weinstock and JB Trading amended their answer in the Kings County action. The amended answer asserted two additional counterclaims relating to the ownership of Realty Corp. and the Brooklyn properties.

More significantly, Weinstock and JB Trading asserted with their amended answer a third-party complaint against seven third-party defendants, including Cleary, six of whom are defendants in the instant action. The third-party complaint states three causes of action against Cleary concerning many of the same allegations already described above; essentially, these involve breach of fiduciary duty, fraud, and breach of contract. The allegations contained in the third-party complaint include statements regarding, *inter alia*, the substitution agreement, the November 1987 refinancing of the Brooklyn properties, and the December 1987 transfer of title to Associates.

in the first mortgage to be obtained over the cash purchase price paid to the sellers at the closing, will remain intact except as may be necessary for the ordinary and necessary operation of the buildings; and

(iv) [Realty Corp.] will retain appropriate persons to manage and operate the buildings, paying such persons comparable market rates for their services.

Weisz concluded the letter by stating:

Nothing contained in this letter, or in the enclosures, shall be deemed to affect in any manner the claims of Messrs. Weinstock, Walker and Handler, or of the Kaminetzer Yeshiva, to any beneficial interest in [Realty Corp.] or the [Brooklyn properties].

7. The other counterclaims feature Handler prominently, although in connection with other transactions.

Thereafter, the parties in the Kings County action engaged in a tumult of motion practice. As a result, the court, *inter alia,* amended its prior order so that the reference to a referee included the issue of the extent of any ownership interest Weinstock or JB Trading might have in Realty Corp. and denied a motion by Weinstock and JB Trading for summary judgment as to their alleged 100% ownership of Realty Corp.; also, the court granted Cleary's motion to dismiss the third-party complaint without prejudice to its reassertion should Weinstock or JB Trading be found to have an ownership interest in Realty Corp.

### The Instant Action

Upon reviewing the background of this matter, the instant action appears as a natural extension. Weinstock is pursuing his interest in Realty Corp. and the Brooklyn properties. Having had certain of his claims at least temporarily thwarted in the Kings County action, Weinstock has sought out a new avenue of attack upon defendants, most of whom have already been implicated in the Kings County action.

Here, Weinstock sues under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961, *et seq.* Weinstock asserts nineteen causes of action against eleven defendants arising for the most part out of his claims regarding Realty Corp. and the Brooklyn properties. The amended complaint is organized around the alleged fraudulent conduct of defendants surrounding Realty Corp. and Glenwood Estates.[8]

To restate the extensive allegations contained in the amended complaint is unnecessary in view of the background material already provided. It suffices to note that Weinstock alleges that defendants conspired through a racketeering enterprise to steal his interest in Realty Corp. and Glenwood Estates.[9] The underlying factual allegations speak to, *inter alia,* the November 1987 refinancing of the Brooklyn properties, the December 1987 transfer of title to Associates, and the substitution agreement.

### Discussion

Cleary initially urges the Court to grant its motion on the basis of the order in the Kings County action dismissing the third-party complaint of Weinstock and JB Trading against Cleary because Weinstock and JB Trading had yet to demonstrate adequately an ownership interest in Realty Corp. Cleary argues that until Weinstock and JB Trading meet the requirement set by the court in the Kings County action, they should be unable to pursue Cleary in any forum on their claims. Cleary's argument has great appeal because the claims contained in the third-party complaint in the Kings County action are very similar to the claims contained in the amended complaint here; Weinstock appears to have brought this action attempting to evade the restriction placed upon him in the Kings County action.

Nevertheless, the doctrines of res judicata and collateral estoppel do not clearly apply to these circumstances. Most noticeably, Weinstock's claims regarding Glenwood Estates

---

**8.** The amended complaint states seventeen causes of action against Cleary. Five of the causes of action arise under RICO and form the basis for this Court's jurisdiction. The other twelve causes of action include fraud, conspiracy to defraud, conversion, an accounting, imposition of a constructive trust, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, violation of N.Y.Jud. Law § 487 (misconduct by attorneys), breach of contract, prima facie tort, and legal malpractice.

**9.** Weinstock's allegations regarding Glenwood Estates arise out of the same background as the allegations concerning the Brooklyn properties insofar as JB Trading allegedly received an interest in Glenwood Estates in connection with the Nassau County action. *See* n. 3, *supra.* Defendants, except for Associates, allegedly took vari-

ous actions affecting the Yonkers property to the detriment of JB Trading's interest in Glenwood Estates. Although distinct, the allegations concerning Glenwood Estates correspond with the allegations concerning Realty Corp., *e.g.,* Weinstock alleges that defendants have concertedly schemed to deprive him of his interests in the Brooklyn properties and the Yonkers property. Notably, Weinstock and JB Trading instituted an action regarding their alleged interest in Glenwood Estates, *Weinstock v. Handler,* No. 11133/88 (N.Y.Sup.Ct. N.Y. County) (the "New York County action"), and were denied summary judgment on the basis of issues of fact surrounding the alleged transfer of the Walkers' 65% interest in Glenwood Estates to Weinstock and JB Trading.

are not at issue in the Kings County action. Thus, although Cleary presents a serious argument for preventing Weinstock from asserting his claims in any forum until he establishes an ownership interest in Realty Corp., this argument does not address fully the situation now faced by the Court.

The second argument asserted by Cleary provides a more lucid and better developed basis for dismissal of the amended complaint. In *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), the Supreme Court noted the existence of certain principles governing the contemporaneous exercise of concurrent jurisdictions by state and federal courts. "These principles rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (citation omitted). While recognizing the obligation of federal courts to exercise jurisdiction, the Supreme Court set out several factors in *Colorado River* for a district court to evaluate in determining if circumstances permitted dismissal for reasons of "wise judicial administration." *Id.* 96 S.Ct. at 1246–47. These factors must be carefully balanced and applied to the specific facts before a court. *Id.; Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983). Since *Colorado River,* federal courts have time and time again followed the analysis set out by the Supreme Court and have declined to adjudicate disputes before them in deference to parallel state court proceedings. *See American Disposal Servs., Inc. v. O'Brien,* 839 F.2d 84, 87 (2d Cir.1988) (setting out six factors).

The first factor considered in regard to *Colorado River* abstention is the assumption of jurisdiction over a res. Here, the existence of a res is not easily apparent but does exist and weighs in favor of this Court's deciding not to exercise jurisdiction. Although Weinstock formally asserts an ownership interest in Realty Corp. and Glenwood Estates, Weinstock's substantive concerns lie with the Brooklyn properties and the Yonkers property to which he claims to have been

denied sticks in their respective bundles of rights. Furthermore, to the extent that Weinstock contends that he owns 100% of the stock in Realty Corp., Realty Corp. itself is a res at issue. *See Tweel v. Frankel,* 444 F.Supp. 1071, 1076–77 (S.D.W.Va.1978). Weinstock himself makes conspicuous the disputed ownership of Realty Corp. by naming Realty Corp. as a plaintiff in this action. Because the ownership of Realty Corp. and Glenwood Estates is already before the New York courts in the Kings County action and the New York County action, the first *Colorado River* factor weighs in favor of this Court's determination to decline jurisdiction.

The second factor, the inconvenience of the federal forum, appears to be neutral in this matter. The third factor, the desirability of avoiding piecemeal litigation, weighs heavily toward dismissing this action, however. In the instant action, the Kings County action, and the New York County action, the alleged transfers to Weinstock and JB Trading of interests in Realty Corp. and Glenwood Estates form the central dispute between the parties. All of Weinstock's causes of action in this matter hinge upon ownership of Realty Corp. and Glenwood Estates; if Weinstock and JB Trading never received an ownership interest in those entities, then this suit fails. As already discussed above, the courts in the Kings County action and the New York County action have found that a genuine issue exists as to the ownership of the entities; each court denied a motion for summary judgment by Weinstock and JB Trading. Moreover, the court in the Kings County action ruled that the issue of whether Weinstock and JB Trading have an ownership interest in Realty Corp. is so fundamental that it dismissed claims against many of the same defendants whom Weinstock now pursues here pending the finding of some such ownership interest. Accordingly, if this Court allows the instant action to proceed, the possibility exists that it will reach a determination as to Weinstock's ownership of Realty Corp. and Glenwood Estates conflicting with the state courts having concurrent jurisdiction.[10]

---

10. Allowing Weinstock to pursue claims against

Cleary before he establishes an ownership inter-

The fourth *Colorado River* factor, the order in which jurisdiction was obtained, also favors the dismissal of this action. Simply, Weinstock instituted the instant action years after the underlying factual disputes were already the subject of litigation in the New York courts. Even granting that Weinstock did not actively seek to protect his alleged interests until 1988 because of illness, this suit comes almost five years late. Moreover, by asserting here claims nearly identical to those asserted in the state forums after having received several adverse rulings there, Weinstock appears to have instituted this action as much for tactical reasons as for a genuine interest in obtaining relief. *See Moses H. Cone*, 103 S.Ct. at 937 n. 20 ("the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation").

Fifth, the Court must consider whether federal or state law provides the rule of decision. Only the five RICO causes of action stated in the amended complaint arise under federal law. In view of the other factors weighing in favor of *Colorado River* abstention and the predominance of state claims in the amended complaint, this factor does not shift the balance toward retaining jurisdiction. Moreover, this factor has little significance because Weinstock may pursue his RICO claims in state court. *See Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (state courts have concurrent jurisdiction over civil RICO actions); *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir.1989) (exercising *Colorado River* abstention where RICO claims exist). In addition, the sixth factor, whether state court proceedings will adequately protect Weinstock's rights, is also satisfied because he can assert his RICO claims in state court. *Lawrence v. Cohn*, 778 F.Supp. 678, 686 (S.D.N.Y.1991).

To the extent that Cleary is not a party to the concurrent state proceedings, my evaluation of the *Colorado River* factors does not change. Essentially, the same claims are at issue in the state courts as are contained in the amended complaint. With this action, Weinstock is once again asserting his alleged ownership interest in Realty Corp. and Glenwood Estates, challenging the November 1987 refinancing of the Brooklyn properties and the December 1987 transfer of title to Associates, and alleging breaches of the substitution agreement. *See Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir.1985) ("Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit."); *see also Nakash*, 882 F.2d at 1416–17 (substantial similarity, not exact parallelism, required between state and federal actions). To the extent Weinstock seeks relief against Cleary, Weinstock has the right to institute proceedings against Cleary in the Kings County action if he is determined to have an ownership interest in Realty Corp. In addition, the dismissal of the instant action does not preclude Weinstock from instituting another suit in this Court upon the conclusion of the concurrent state actions.

Because the Court has found it appropriate not to exercise jurisdiction pursuant to *Colorado River*, the Court need not go beyond the threshold issue of jurisdiction and address the third alternative presented by Cleary for dismissal, the failure of Weinstock to state a claim under RICO. In addition, because the Court dismisses the amended complaint pursuant to *Colorado River*, the other defendants need not respond to the amended complaint.[11] Significant resources, both of the Court and the parties, are saved in proceeding along this course.

### Conclusion

The amended complaint is dismissed without prejudice to Weinstock's right to renew his claims in this Court upon the conclusion

---

est in Realty Corp. would in fact conflict in part with the court's ruling in the Kings County action.

11. The Court, by Order dated January 26, 1993, extended the time for defendants other than Cleary to respond to the amended complaint until after the disposition of Cleary's motion to dismiss. Notably, those defendants are in the position to make meritorious motions to dismiss under *Colorado River* consistent with, if not substantially identical to, the Court's analysis herein.

of the Kings County action and the New York County action.

SO ORDERED.

ORDER

PRESKA, District Judge.

Plaintiffs having moved to reargue the Court's Opinion and Order dated March 8, 1993, and the Court having found that plaintiffs do not set forth any matters or controlling decisions overlooked by the Court which might have influenced its decision, *see Farkas v. Ellis,* 783 F.Supp. 830 (S.D.N.Y.), *aff'd,* 979 F.2d 845 (1992), it is hereby

ORDERED that plaintiffs motion for reargument is denied.

SO ORDERED.